## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| IVANA USKOKOVIC )<br>800 4th St. SW Unit 5506 )<br>Washington, D.C. 20024 )<br> )<br>    **Plaintiff,** )<br> )<br>**v.** )<br> )<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY (a/k/a "WMATA"), )<br>600 Fifth Street N.W. )<br>Washington, DC 20001 )<br>Serve:    Carol O'Keefe, Esquire )<br>          General Counsel's Office )<br>          WMATA )<br>          600 Fifth Street NW )<br>          Washington, DC 20001 )<br> )<br>    **Defendant.** ) | Case No. |

## COMPLAINT

Plaintiff, Ivana Uskokovic, by and through counsel, brings this action against Washington Metropolitan Area Transit Authority ("WMATA") and represents to the court as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit Regional Compact, which establishes original jurisdiction in this Court over WMATA matters pursuant to WMATRC Article XVI § 81, codified in District of Columbia law as D.C. Code Ann. § 9-1107.10.

2.  Venue in this Court is proper as the negligent acts and/or omissions committed by Defendant occurred in the District of Columbia.

**PARTIES**

3.      At all times relevant herein, Plaintiff Ivana Uskokovic, was an adult citizen and resident of the District of Columbia.

4.      At all times relevant herein, Defendant WMATA was the owner of the Metro subway system being operated by its employees, who were acting within the course and scope of their employment and/or agency with WMATA.

5.      Defendant Washington Metropolitan Area Transit Authority ("WMATA") was created when Congress approved the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), D.C. Code §§ 9-1107.01 et seq., which was signed by the District of Columbia, Maryland, and Virginia.

6.      By the terms of the WMATA Compact that created it, WMATA is liable for its negligent acts and/or omissions and those of its Directors, officers, employees, and agents committed in the conduct of any proprietary function. D.C. Code § 9-1107.01(80).

7.      The provision of mass transportation is a proprietary function within the meaning of the WMATA Compact.

**FACTS**

8.      On the afternoon of January 12, 2015, Ms. Uskokovic was a passenger on WMATA Train 302, a six-car train traveling on the Yellow line toward Huntington, Virginia.

9.      At the time of the events in this case, Ms. Uskokovic was 8 months pregnant.

10.      At approximately 3:15 p.m., Train 302 encountered dense smoke in the tunnel and came to an abrupt halt, several hundred feet after leaving the L'Enfant Plaza station.

11.      Upon information and belief, a circuit breaker had tripped on the third rail (the conductor running alongside the train tracks that supplies high-voltage electric power to Metro

trains) of that section of track approximately ten minutes beforehand, but had gone uninvestigated by WMATA.

12.     Train 302 became disabled in the tunnel, without power and illuminated by emergency lighting only.

13.     Passengers on Train 302, including Plaintiff, were instructed to remain calm, to stay on the train, and to keep the doors closed. These instructions were repeated throughout the passengers' ordeal.

14.     At approximately 3:16 p.m., WMATA Operations Control Center attempted to activate ventilation fans to evacuate the smoke from the relevant section of tunnel. Upon information and belief, the fans failed to achieve their objective either due to their failure to activate, their activation in the wrong direction, or some other cause.

15.     According to the National Transportation Safety Board's Preliminary Report on the incident,[1] released January 16, 2015, the smoke in the tunnel was caused by "severe electrical arcing" from the third rail approximately 1,100 feet ahead of where Train 302 stopped. Photos taken by NTSB investigators revealed the severity of the damage done by the arcing:

 

---

[1] NATIONAL TRANSPORTATION SAFETY BOARD, Preliminary Report: WMATA Smoke and Electrical Arcing Accident in Washington, DC, Jan. 16, 2015, http://www.ntsb.gov/investigations/AccidentReports /Pages/DCA15FR004_preliminary.aspx.

16.     At approximately 3:18 p.m., the District of Columbia Office of Unified

Communications ("OUC") received a 911 call from a construction worker reporting smoke

emanating from a Metro ventilation shaft located at 9th Street and Maine Avenue SW, roughly a

half-mile south of the train's location.

17.     At approximately 3:22 p.m., OUC received a 911 call from WMATA Supervisor

of Metro Rail Unit 22 reporting heavy smoke in the L'Enfant Plaza station.

18.     At approximately 3:25 p.m., the train traveling just behind Train 302 on the same

route arrived at the L'Enfant Plaza station, encountered smoke, and stopped roughly 100 feet

short of the southern end of the platform.

19.     At approximately 3:28  p.m., OUC  dispatched a "Metro Station Box Alarm,"

which, in compliance with District of Columbia Fire and Emergency Medical Services

Department ("FEMS") protocol, included the following units: (a) 5 Engine Companies; (b) 2

Ladder Trucks; (c) 2 Battalion Fire Chiefs; (d) 1 Battalion Fire Chief to WMATA Operations

Command Center ("OCC") in Landover, MD; (e) 1 Heavy Rescue Squad; (f) 1 Basic Life

Support Unit; (g) 1 Advanced Life Support Unit; and (h) 1 EMS Supervisor.

20.     At approximately 3:31 p.m., the first FEMS responders arrived on-scene at the

L'Enfant Plaza station.

21.     At approximately 3:33 p.m., OUC received the first of several 911 calls from

frightened passengers on smoke-filled Train 302.

22.     WMATA did not confirm to FEMS that electricity to the relevant sections of the

third rail has been shut off in order to allow the FEMS crews to safely access Train 302 until

approximately 3:44 p.m.

4

23.     The evacuation did not begin until 4:00 p.m., due to WMATA's failure to timely inform the FEMS that it was safe to begin rescue operations.

24.     Over the course of the approximately forty-five minutes throughout which Ms. Uskokovic was trapped in the smoke-filled train, she experienced difficulty breathing, violent coughing, and emotional distress for her own safety and that of her child, afraid that the smoke and toxic air was putting her child in danger and that she would lose the baby.

25.     As a direct and proximate result of the events described above, Plaintiff suffered damages which include, but are not limited to, the following: severe and permanent injuries; physical pain and mental anguish, past, present, and that which she may be reasonably be expected to suffer in the future; disfigurement, deformity, and associated humiliation and embarrassment; inconvenience, past, present, and that which she may be reasonably be expected to suffer in the future; medical expenses, past, present, and that which she may be reasonably be expected to suffer in the future; lost earnings and loss of earning capacity, past, present, and that which she may be reasonably be expected to suffer in the future; and plaintiff has otherwise been damaged.

## COUNT I
### (Negligence)

26.     The preceding paragraphs are realleged and incorporated by reference, herein.

27.     At all times relevant herein, WMATA's trains, railroad operations, tunnels, tracks, and adjoining railroad tracks (the "subway property") were owned, controlled, operated, managed, constructed, maintained, repaired, designed, evaluated, built, overseen, patrolled, and supervised by WMATA.

28.     On January 12, 2015, and prior thereto, Defendant WMATA was responsible for maintaining and ensuring the safe use and proper condition of the railroad operations and property, including locomotives, trains, signs, signal, switches, safety devices, communication devices, and other equipment at and along the subway property, and for properly and safely managing, overseeing, and coordinating the travel of railroad trains upon and along said property.

29.     At all times mentioned herein, Defendant WMATA, as a common carrier, owed a duty of reasonable care to its passengers, including Ms. Uskokovic.

30.     At all times relevant hereto, Defendant WMATA breached its duty in some or all of the following ways:

a.  By failing to properly inspect and maintain the third rail running through the relevant section of tunnel;

b.  By failing to properly inspect and maintain the ventilation system for the relevant section of tunnel;

c.  By failing to properly train its agents, servants, and/or employees in the proper activation and use of the ventilation system in the event of a fire or smoke emergency;

d.  By failing to calibrate its radio equipment to be compatible with that of FEMS despite having clear notice of its non-compliance;

e.  By failing to equip its trains, specifically Train 302, with safety equipment adequate for emergencies of this nature;

f.  By failing to adequately investigate the third-rail circuit breaker that tripped at 3:06 p.m. on January 12, 2012;

g.  By failing to move Train 302 to a safe location (*e.g.*, back to the L'Enfant Plaza station) after it first encountered smoke in the tunnel;

h.  By failing to in a timely manner shut off electricity to the third rail in the relevant section of tunnel;

     i.    By failing to in a timely manner inform FEMS that electricity had been shut off to the third rail in the relevant section of tunnel;

     j.    By failing to in a timely manner evacuate Train 302 if and when it was determined that the train could or would not be moved and its cars were filling with smoke; and

     k.    By otherwise negligently, carelessly, and wrongfully failing to take reasonable precautions to protect its passengers from injury.

31.     As a direct and proximate result of Defendant WMATA's negligence, Ms. Uskokovic was trapped, helpless, in Train 302 for nearly forty-five minutes as it filled with smoke; during this time she fought, ever more agonizingly, to breathe as the smoke entered her body and damaged her lungs and endangered her child.

32.     As a further direct and proximate result of Defendant WMATA's negligence, Ms. Uskokovic experienced physical pain, as well as excruciating mental anguish and fear for her life and that of her child.

WHEREFORE, Plaintiff Ivana Uskokovic demands judgment against Defendant WMATA in the full and just amount of One Million Five Hundred Thousand Dollars ($1,500,000.00), plus interest and costs.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury with respect to each element of her claim.

Respectfully submitted,

*/s/ Harvey S. Williams*
Harvey S. Williams [No. 437147]
Williams Legal Group
2141 Wisconsin Ave. N.W.
Ste. N3
Washington, D.C. 20007
PH: (202) 462-5900
FX: (202) 462-5904

7

hsw@williamslegalgroup.com

Attorney for Plaintiff Uskokovic